**Andrea PECKHAM, as the Mother and Natural Guardian of Kyle M. Peckham, an infant, Andrea Peckham, individually, Plaintiffs–Appellants and Cross–Appellees,**

v.

**GEM STATE MUTUAL OF UTAH, a corporation, Defendant–Appellee and Cross–Appellant.**

**Nos. 90–6230, 90–6239.**

United States Court of Appeals, Tenth Circuit.

May 21, 1992.

Glen Mullins, Oklahoma City, Okl., for plaintiffs-appellants and cross-appellees.

Jeffrey R. Oritt of Wilkins, Oritt & Rennow, Salt Lake City, Utah, for defendant-appellee and cross-appellant.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and JENKINS, Chief District Judge.[*]

EBEL, Circuit Judge.

The threshold question raised by this appeal is whether the benefit program at issue is an "employee welfare benefit plan" under the Employee Retirement Income Security Act (ERISA). Because we answer this question affirmatively, we also address whether ERISA preempts state law doctrines of estoppel and substantial compliance with contract. We hold that state law estoppel doctrines are preempted by ERISA but that the doctrine of substantial compliance is not so preempted.

## FACTS

Defendant Gem State Mutual of Utah (Gem) created the Inter–Mountain Employers Trust (IMET) to provide Gem group policies to IMET subscribers, a group of unrelated employers. AAA Engineering & Drafting (AAA) subscribed to IMET and thereby obtained Gem medical coverage for its employees. AAA pays for medical coverage for all of its employees. If an employee wants to extend this coverage to his or her dependents, AAA will deduct the required additional premium for family coverage from the employee's salary.

There are at least two ways that a newborn child could be covered under the Gem policy. First, "[a] newborn child will automatically be covered from the date of birth if 'Dependent' coverage is carried" so long as a Change Form is completed within thirty-one days of the birth. IMET Administrative Instructions at 1 (in App. D to Appellee's Br.). Alternatively, if only "Single" coverage is carried, a newborn will be added effective "on the next premium due date following the birth of the child" so long as a Change Form is completed within thirty-one days of the birth. *Id.* However, the Administrative Instructions go on to caution that "[i]f application is not made within 31 days following birth, the child will not be added except with Evidence of Health submission and acceptance." *Id.*

Plaintiff Andrea Peckham was an employee of AAA. Initially, she elected only single coverage. On July 9, 1987, Ms. Peckham requested a change to dependent coverage to include her husband Michael and son Michael, Jr. on her policy. Because these dependents were not originally covered, they needed to complete a medical questionnaire to obtain coverage. They completed the medical questionnaire on August 26, 1987. In the meantime, Ms. Peckham gave birth to her son and co-plaintiff, Kyle, on August 25. Kyle was not mentioned on the medical questionnaire regarding Michael and Michael, Jr., and Ms. Peck-

[*] The Honorable Bruce S. Jenkins, Chief United States District Judge for the District of Utah, sitting by designation.

ham did not request that Kyle be covered on her policy at that time. Gem approved medical coverage for Michael and Michael, Jr. on September 2, 1987, and accordingly it approved the conversion of Ms. Peckham's policy to a dependent or family policy as of the next premium date, which was October 1, 1987.

Kyle had been born with spina bifida and hydrocephalus, and started incurring medical expenses immediately. On September 8, 1987, Gem received a claim for medical benefits for a "baby boy Peckham." On September 28, 1987,[1] Gem determined that the child was not a covered dependent and notified Ms. Peckham that, because she had not completed a Change Form to add her new child within 31 days of his birth, she would need to complete a medical questionnaire on him to get him approved for coverage. On October 23, 1987, Gem received the questionnaire, which indicated that Kyle was born with spina bifida and hydrocephalus. On October 28, 1987, Gem declined coverage for Kyle based on the questionnaire.

Ms. Peckham briefly left AAA on maternity leave. When she returned to AAA, she applied anew for employee coverage with Gem, requesting dependent coverage for her whole family. Gem accepted her application for family coverage, effective December 1, 1987. However, under a policy exclusion, expenses related to Kyle's pre-existing conditions were not covered until June 1, 1988, which was six months after the issuance of the new policy.

Ms. Peckham sued Gem, individually and on behalf of Kyle, for damages under common law tort and contract theories and for Kyle's medical claims from the date of his birth through June 1, 1988. Jurisdiction is based on diversity. The district court granted partial summary judgment to Gem. The court found that the policy at issue was covered by ERISA and therefore that Ms. Peckham's claims for breach of duty of good faith and fair dealing, emotional distress, and punitive damages were preempted by ERISA. The court also found that there was no way that Kyle could claim medical coverage prior to September 1, 1987, and hence it granted summary judgment to Gem on the claim for medical coverage from Kyle's birth to September 1, 1987.[2] However, the court found that but for Gem's dilatory processing Ms. Peckham would have qualified for coverage for Kyle effective September 1, 1987, and hence it awarded her damages for Kyle's medical claims between September 1, 1987, and June 1, 1988.

Ms. Peckham appeals the grant of summary judgment to Gem on her state common law claims and on her medical claims prior to September 1, 1987. Gem cross appeals the district court's award of medical claims for the period between September 1, 1987 and June 1, 1988.

## I. The Applicability of ERISA

■■■ Ms. Peckham does not seriously dispute that if her policy with Gem is covered by ERISA, her state common law claims for breach of duty of good faith and fair dealing, emotional distress, and punitive damages would be preempted. *See* 29 U.S.C. § 1144(a) (ERISA preempts state law relating to an ERISA plan); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 57, 107 S.Ct. 1549, 1555–56, 1558, 95 L.Ed.2d 39 (1987) (ERISA preempts state law actions for improper processing of claims); *Settles v. Golden Rule Ins. Co.,* 927 F.2d

1. It is unclear whether Gem made this determination on September 28 or September 30, 1987. *See* Order (May 31, 1990) at 6 n. 7. The determination of which date is the correct one is unimportant to our analysis.

2. This finding was based on the fact that Ms. Peckham had single coverage rather than dependent coverage on the date of Kyle's birth. Thus, even if a Change Form had been timely submitted to add Kyle, the earliest that he could have been covered under the terms of the policy was the first premium due date following his birth, September 1, 1987. The district court also found that Ms. Peckham's failure to secure dependent coverage prior to Kyle's birth could not be blamed on allegedly dilatory conduct by Gem, as her own delays in remitting her dependents' medical questionnaires would have precluded coverage by that time even if Gem had acted with dispatch.

505, 508 (10th Cir.1991) (same).[3] Thus we must determine whether AAA's provision of Gem insurance for AAA employees—and therefore Ms. Peckham's policy with GEM—is covered by ERISA.[4] We review this question *de novo*.[5]

ERISA governs "employee benefit plan[s]." 29 U.S.C. § 1003(a). One form of employee benefit plan is an "employee welfare benefit plan." *Id.* § 1002(3). As applicable to this case, an "employee welfare benefit plan" is

any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance ... medical, surgical, or hospital care or benefits....

*Id.* § 1002(1).

As noted by the Eleventh Circuit, this definition can be broken down into five elements:

(1) a "plan, fund, or program" (2) established or maintained (3) by an employer ... (4) for the purpose of providing medical, surgical, [or] hospital care ... benefits ... (5) to participants or their beneficiaries.

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (1982); *see also Wickman v. North-*

*west Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.) (adopting *Donovan*'s breakdown of the elements of § 1002(1)), *cert. denied,* —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir.1986) (same), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

Elements (3), (4), and (5) of the above definition are clearly satisfied by Peckham's policy with Gem and are not disputed. The policy was offered by an employer, AAA, for the purpose of providing medical care benefits to participants, its employees. This leaves elements (1) and (2).

**A. The "plan, fund, or program" requirement**

■ Element (1) is also satisfied. The prevailing standard for determining the existence of a plan was developed by *Donovan:* A "plan, fund, or program" under ERISA is established if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." 688 F.2d at 1373; *see also Hansen*

---

**3.** At one point in her brief, Ms. Peckham does argue that payment of her claim will have no appreciable effect upon any ERISA plan of AAA. For support, she cites *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant finding that the law 'relates to' the plan.") (citing as example a state law permitting garnishment of pension income to enforce alimony). However, *Pilot Life* made it clear that state laws providing for damages for tortious breach of contractual duty, emotional distress, and punitive damages "relate to" an ERISA plan and are therefore preempted. 481 U.S. at 43, 57, 107 S.Ct. at 1550–51, 1558. In the wake of *Pilot Life,* as well as under the common-sense meaning of "relating to," it cannot validly be argued that state laws authorizing damages for nonpayment of claims do not "relate to" an ERISA plan.

**4.** The district court determined, and Gem does not dispute on appeal, that IMET itself is not an ERISA plan. *See Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987) (where insurance trust recruits

heterogenous, unrelated employers, it is not ERISA plan); *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982) ("The courts, congressional committees, and the Secretary [of Labor] uniformly have held that" multiple employer trusts are not welfare benefit plans.).

**5.** Gem argues, and the district court agrees, that "[t]he existence of an ERISA plan [i.e., whether an insurance policy is governed by ERISA] is a question of fact, to be answered in light of all of the surrounding circumstances and facts from the point of view of a reasonable person." Order (Aug. 2, 1989) at 4 (citing *Kanne v. Connecticut General Life Ins. Co.,* 859 F.2d 96, 98 (9th Cir.) (per curiam), *superseded on other grounds,* 867 F.2d 489 (9th Cir.1988) (per curiam), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989)). However, we disagree with *Kanne* and hold that the determination of whether a policy is governed by ERISA is a mixed question of fact and law. Because this mixed question essentially involves conclusions drawn from undisputed facts, it is primarily a legal question. *See National Collegiate Athletic Ass'n v. Commissioner,* 914 F.2d 1417, 1420 (10th Cir.1990). Accordingly, our review is *de novo.*

*v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991) (adopting *Donovan*'s test for the existence of a plan, fund, or program); *Wickman*, 908 F.2d at 1082 (same); *Ed Miniat*, 805 F.2d at 738 (same).[6] With respect to AAA's provision of Gem insurance to AAA's employees, a reasonable person would determine that the intended benefit is medical coverage, that the intended class of beneficiaries is AAA's employees and, in the case of dependent coverage, their dependents, that financing comes from AAA with the possibility of supplemental financing from the employees if dependent coverage is requested, and that the procedures for receiving benefits are specified in the literature provided by IMET or Gem. Thus, AAA's plan is the type of "plan, fund, or program" contemplated by ERISA.

Ms. Peckham cites *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), for the proposition that a "plan" requires an "ongoing administrative program." *Id.* at 11, 107 S.Ct. at 2217. Although we agree that such an ongoing administrative program is required under *Fort Halifax*, we disagree with Ms. Peckham's contention that AAA's plan is not

such a program. The obligation at issue in *Fort Halifax* was mandated by a Maine statute requiring employers to provide lump-sum severance payments to employees in connection with certain plant closings.[7] The Court reasoned that because such a program required at most a single payment, employers were not required to establish "an ongoing administrative program" that might be subject to conflicting state regulations or to administer funds that might be subject to abuse or misappropriation. Because abuse and conflicting regulations were the primary concerns of ERISA, the Court held that the Maine statute did not constitute or require a "plan" for purposes of ERISA. In contrast to the program in *Fort Halifax*, AAA's program is ongoing. AAA must keep records and make regular payments to Gem.[8] AAA also provides two people who act as liaisons between its employees and Gem, and in that capacity they serve to some extent as administrators. AAA's program is thus subject to the risk of conflicting regulation and abuse and is therefore the type of ongoing administrative program that *Fort Halifax* would deem a "plan" under ERISA. *See Hansen*, 940 F.2d at 978.[9]

---

**6.** The Tenth Circuit has also cited *Donovan* with approval. *See Roe v. General American Life Ins. Co.*, 712 F.2d 450, 452 (10th Cir.1983).

**7.** Severance benefits such as those at issue in *Fort Halifax*, are evaluated under the same five part definition as health benefits to determine whether they constitute an "employee welfare benefit plan" with one exception: The purpose, element (4), must be to provide severance benefits rather than medical, surgical, or hospital benefits. *See Fort Halifax*, 482 U.S. at 7 & n. 5, 107 S.Ct. at 2215 & n. 5.

**8.** *Donovan* noted that

the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

688 F.2d at 1373 (footnote omitted).

**9.** Ms. Peckham's contention that AAA's function is not "administrative" appears to arise from the mistaken assumption that an employer does not administer a plan unless he controls eligibility for coverage and processes claims for benefits

under the plan. This assumption also appears to underlie her contention that a plan may exist where an employer is in direct contact with an insurer but not where the employer deals with the insurer through an employers trust such as IMET.

We do not believe that *Fort Halifax* requires an employer to exercise control over eligibility or claims—essentially to play the role of an insurer—or even to be in direct contact with the insurer. An "employee welfare benefit plan" is specifically defined to include employers' provision of benefits "through ... insurance or otherwise." 29 U.S.C. § 1002(1); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732–34, 105 S.Ct. 2380, 2385–86, 85 L.Ed.2d 728 (1985) (applying ERISA preemption analysis where insurers "issue group-health policies providing hospital and surgical coverage to plans, or to employers"). Presumably, in most instances where an employer provides benefits through the purchase of insurance, the insurer rather than the employer makes determinations regarding eligibility and claims. *See Donovan*, 688 F.2d at 1374 ("This common sense approach adequately serves the needs of most employers and unions seeking to provide health insurance to employees at an ascertainable cost; they can agree to furnish only what the insurer contracts

## B. The "established or maintained" requirement

■ AAA's plan also satisfies element (2) of the definition of "employee welfare benefit plan," as AAA established or maintained the plan. The "established or maintained" requirement appears designed to ensure that the plan is part of an employment relationship. *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) ("Congress' primary concern was with the mismanagement of funds accumulated to finance *employee* benefits and the failure to pay *employees* benefits from accumulated funds.") (emphasis added). The "established or maintained" requirement seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan. *See Hansen*, 940 F.2d at 978 (requiring "some meaningful degree of participation by the employer in the creation or administration of the plan" and, if insurance is involved, requiring that the employer "have had a purpose to provide ... benefits to its employees"); *Wickman*, 908 F.2d at 1083 ("The crucial factor in determining whether a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis."); *see also* 29 C.F.R. § 2510.3–

1(j) (excluding from ERISA coverage group-type insurance plans in which employer makes no contribution, does not mandate participation by its employees, does not endorse the plan, and receives no profit in connection with the plan).[10]

Given that AAA joined IMET in order to obtain insurance for its employees, purchased basic insurance from Gem for its employees, and listed insurance in its company manual as an employment benefit, AAA's plan was clearly part of its employment relationship with its employees. Thus, AAA's plan satisfies the "established or maintained" requirement.

■ In sum, AAA's program qualifies as an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). This conclusion is consistent with our holding in *Roe v. General American Life Ins. Co.*, 712 F.2d 450 (10th Cir.1983). In *Roe*, an employer made life insurance available to its employees through a life insurance company and contributed part of each employee's premium. If an employee wanted additional coverage for long-term disability, the employer deducted the difference in premium from the employee's pay. *Id.* at 451. We held that such a plan was an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). *Id.* at 452.[11]

Thus, we affirm the district court's holding that AAA's plan was an ERISA plan

---

to furnish and avoid any unforeseen liability for, or denial of, benefits to employees.").

*Fort Halifax* did not purport to overturn *Metropolitan Life* or any of those cases that have found ERISA plans based upon employers' purchase of insurance—in several instances through employers trusts—where the employers did not determine eligibility or process claims. *See, e.g., Hansen*, 940 F.2d at 978; *Wickman*, 908 F.2d at 1083; *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 494 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Roe*, 712 F.2d at 451–52; *Donovan*, 688 F.2d at 1375; *see also Ed Miniat*, 805 F.2d at 741 (purchase of insurance would be "plan" if employer intended to provide benefits to all salaried employees). In fact, in a post-*Fort Halifax* decision, the Court indicated that *Metropolitan Life*'s application of ERISA analysis to insured plans was still appropriate. *See FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990).

**10.** This Labor Department regulation clearly does not apply to AAA's plan as AAA contributes

100% of its employees' single insurance premiums. The fact that AAA's plan is not excluded from ERISA coverage by this regulation does not compel the conclusion that the plan is an ERISA plan. However, this regulation is indicative of the Labor Department's interpretation of the definition of "employee welfare benefit plan" which supports our interpretation of the "established or maintained" requirement.

**11.** Ms. Peckham offers several other arguments for the proposition that AAA's plan was not covered by ERISA. We disagree with each of these arguments. First, Ms. Peckham alleges that AAA's plan failed to comply with the regulatory requirements of ERISA. Even if this were so, it would not exempt AAA from those requirements. *See Fort Halifax*, 482 U.S. at 18 n. 10, 107 S.Ct. at 2221 n. 10 (fact that employer does not comply with ERISA requirements does not mean that no ERISA program exists); *Donovan*, 688 F.2d at 1372 (noting incongruity of allowing employer to avoid ERISA regulation by failing to comply with it). Similarly flawed is Ms.

and that ERISA preempted Ms. Peckham's state claims for breach of duty of good faith and fair dealing, emotional distress, and punitive damages.

## II. ERISA Preclusion of Estoppel

The fact that Ms. Peckham's policy with Gem is part of an ERISA plan preempts her estoppel claims as well as her claims for breach of duty of good faith, emotional distress, and punitive damages.[12] This preemption applies to her claims under the doctrines of both promissory estoppel and estoppel by conduct.

### A. Promissory estoppel

 Ms. Peckham argues that Gem is estopped from denying coverage for Kyle as of the date of his birth because Gem representatives allegedly told employees of two hospitals that he was covered. This promissory estoppel claim is precluded under ERISA. *See Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1263–64 (10th Cir. 1988) (state common law claim of promissory estoppel based upon an oral modification to an ERISA plan preempted under 29 U.S.C. § 1144(a)).[13] Thus, we affirm the district court's holding that Gem was not precluded under the doctrine of promissory estoppel from denying coverage for Kyle as of the date of his birth, although for reasons different than those relied upon by the district court.[14]

Peckham's argument that references to state laws and lack of reference to ERISA in AAA's policy indicate an intent not to be covered by ERISA. Even if AAA, IMET, and Gem intended not to be covered by ERISA, such an intent would not be controlling. Ms. Peckham here appears to confuse the requirement that an employer intend to provide benefits to its employees as part of the employment relationship with a non-existent requirement that an employer intend to be bound by ERISA. If a plan meets the five criteria outlined in *Donovan* it is governed by ERISA whether or not the parties wish to be subject to ERISA.

Additionally, Ms. Peckham seeks to rely on an interpretation of an "employee welfare benefit plan" offered by a Congressional Committee subsequent to enactment of the statute. Even if AAA's plan through IMET fit within the category that the Committee considered excluded from ERISA, the interpretation of a Congressional Committee subsequent to the passage of an act is not controlling here. *See Southeastern Community College v. Davis*, 442 U.S. 397, 411–12 n. 11, 99 S.Ct. 2361, 2370 n. 11, 60 L.Ed.2d 980 (1979) (report by Senate Committee subsequent to the passage of legislation cannot contradict legislative intent discernible at time of enactment); *United States v. Wise*, 370 U.S. 405, 411, 82 S.Ct. 1354, 1358–59, 8 L.Ed.2d 590 (1962) ("The interpretation placed upon an existing statute by a subsequent group of Congressmen who are promoting legislation and who are unsuccessful has no persuasive significance here."). Ms. Peckham cites *Sioux Tribe v. United States*, 316 U.S. 317, 329–30, 62 S.Ct. 1095, 1100–01, 86 L.Ed. 1501 (1942), in support of her argument, but we do not find that case persuasive here in light of *Davis* and *Wise*. Ms. Peckham's argument that the Committee interpreted ERISA to permit federal courts to develop common law equitable remedies similar to those state common law remedies precluded by *Pilot Life* is similarly flawed.

12. Gem did not specifically argue that ERISA preempts claims of estoppel or substantial compliance. However, in its answer to Peckham's complaint, Gem did raise ERISA preemption generally as a defense to "Plaintiffs' claims for relief, other than their specific claim for coverage of medical expenses under the policy." R., Doc. 7, at 3. Thus, Gem cannot be seen to have waived the defense. Moreover, "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976) (citations and internal quotation omitted). We believe that preemption is clearly suggested by our prior precedent. Additionally, a primary purpose of ERISA preemption is to protect the financial integrity of benefit plans, and extra-contractual claims made on the basis of estoppel have the potential to create injustice in the plan and its other beneficiaries. Thus, under *Wulff* we address the applicability of ERISA preemption to claims of estoppel and substantial compliance.

13. Where the written language of a plan is clear, as it is here, any representation that is contrary to that language can be viewed only as a purported modification of the plan and, hence, preempted by ERISA. We do not address whether such a representation can be used to interpret an ambiguous term of the plan.

14. The district court declined to find promissory estoppel on the ground that, in light of the clear guidelines in the insurance policy, Ms. Peckham could not reasonably have believed or relied upon a statement that Kyle would be covered as of the date of his birth. Those guidelines pro-

## B. Estoppel by conduct

Ms. Peckham makes two estoppel claims based on Gem's allegedly dilatory conduct. First, she argues that Gem's dilatory conduct in processing her request to add her husband and older son to her policy prevented her from having family coverage on the date of Kyle's birth. Had she had such coverage, Kyle might have been entitled to coverage on the day of his birth under the terms of the policy as well as under either Utah or Oklahoma law. *See* 36 Okla.Stat. § 6058(A); Utah Ins.Code § 31A–22–610. Second, she argues that Gem's dilatory processing of Kyle's first claim for benefits prevented her from knowing within thirty-one days that she had not complied with the proper procedures for adding Kyle to her policy. Had she known during this period that she had not successfully added Kyle, she argues, she would have been able to comply with those procedures in time to obtain coverage effective September 1, 1987.

■■■■ These dilatory conduct claims are essentially estoppel claims. They are based upon the principle that Gem should be estopped from denying coverage based on its conduct. State common law claims based on the doctrine of estoppel by conduct "relate to" a benefit plan as surely as claims for promissory estoppel. Under promissory estoppel it is argued that the plan should be modified based upon oral representations of an agent of the plan whereas under estoppel by conduct it is argued that the written provisions of the plan should be overridden to do equity. These claims are therefore preempted by ERISA under the analysis of *Straub*.

*Straub*'s reasoning applies to the doctrine of estoppel by conduct as well as to promissory estoppel. Both doctrines deal with a claim under state common law to modify or avoid the provisions of a written ERISA plan. ERISA's preemption clause precludes state laws from modifying or disregarding the provisions of an ERISA plan for two reasons. First, such state laws (whether statutory or common law) may differ from state to state, subjecting a plan to conflicting state regulation. *See Ingersoll–Rand Co. v. McClendon,* — U.S. ——, ——, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990) (ERISA preemption intended to prevent inconsistent state and local regulation); *Fort Halifax,* 482 U.S. at 9, 107 S.Ct. at 2216 (same). Additionally, and perhaps most important, state laws that permit a plan representative orally or by conduct effectively to modify a plan compromise the integrity of the written plan. A single miscue by a plan agent could result in a modification of the plan in a way that might leave it radically underfunded. *See* 29 U.S.C. § 1001(b) (one of the primary purposes of ERISA [and presumably of its preemption clause] is to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies"). State laws of estoppel by conduct implicate these concerns just as surely as state laws of promissory estoppel implicate such concerns. Thus, ERISA must preempt estoppel by conduct as well as promissory estoppel.

Thus, we reverse the district court's dilatory conduct award of medical coverage for

---

vided that the earliest date of coverage, even if all of the policy requirements were satisfied, would be the first premium date following the birth, or September 1, 1987.

As a second ground for her claim that Kyle was entitled to coverage on the day of his birth, Ms. Peckham argues that such coverage was required by state law. However, the Utah statute cited by Ms. Peckham requires day-of-birth newborn coverage only on family policies, not on single policies. *See* Utah Ins.Code § 31A–22–610. The district court correctly noted that Ms. Peckham did not have family coverage at

the time of Kyle's birth and hence does not qualify under such a state statute. Although Ms. Peckham also cites Okla.Stat. tit. 36, § 6058(A) as mandating newborn coverage, the IMET master policy specifies that Utah law applies to disputes under that policy. Appellant App., Ex. 29. Oklahoma enforces such choice-of-law clauses. *Carmack v. Chemical Bank New York Trust Co.,* 536 P.2d 897, 899 (Okla.1975). Thus, the district court properly declined to consider the Oklahoma statute. Accordingly, we do not address whether these state statutes are preempted under ERISA.

Kyle Peckham for the period commencing September 1, 1987 and affirm the district court's denial of his dilatory conduct claim for the period prior to September 1, 1987, although for reasons different than those stated by the district court.[15]

### III. Substantial Compliance

Ms. Peckham's final argument is that she is entitled to coverage for Kyle as of September 1, 1987 by virtue of her substantial compliance with the terms of her policy with Gem. The policy states that a newborn will be covered as of the first premium due date following the birth, without right of rejection by Gem, so long as a single insured applies for such coverage, via a Change Form, within thirty-one days of the birth. IMET Administrative Instructions at 1 (in App. D to Appellee's Br.).[16] Ms. Peckham argues that by filing a claim for Kyle on September 8, 1987, she gave Gem adequate notice of Kyle's birth and her intention to seek coverage for him within the thirty-one day time frame.

■■■■■■ A threshold issue is whether ERISA preempts the state common law doctrine of substantial compliance. We hold that this doctrine is not preempted by ERISA. As we discussed above in our discussion of ERISA preemption of equitable estoppel, ERISA is concerned with state law doctrines that serve to modify a plan because such doctrines could destabilize the plan as well as subject it to conflicting state regulation. However, these concerns apply only where the potential modification is material. By definition, the doctrine of substantial compliance does not materially modify a plan, but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract. See John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11–15, at 454 (3d ed. 1987) ("If a party has substantially performed, it follows that any breach he may have committed is immaterial."). The doctrine of substantial compliance does not denigrate from an ERISA plan in a way that is significant enough to implicate the concerns underlying ERISA preemption. See *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983) ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."). Thus, ERISA does not preempt the state common law doctrine of substantial compliance. Accordingly, we address Ms. Peckham's substantial compliance argument on its merits.[17]

■■■■■ Gem does not dispute that if Ms. Peckham substantially complied with the terms of the policy she would be entitled to coverage. However, Gem argues, the filing of a claim does not constitute substantial compliance with the policy requirements.

We agree with Gem that filing a claim for an uncovered newborn does not constitute substantial compliance with the policy's notice requirements for obtaining dependent coverage for a newborn. Filing a claim not covered by the contract does not necessarily notify the insurer that the insured wants to add the newborn to her policy nor is it a clear agreement by the insured to pay whatever higher premium

**15.** The district court denied Ms. Peckham's dilatory conduct claim prior to September 1, 1987 under the rationale that, given Ms. Peckham's delay in submitting the medical questionnaire to add her husband and first son to her policy, no reasonable degree of haste by Gem could have resulted in dependent coverage by the date of Kyle's birth, as necessary for Ms. Peckham's argument. Because we believe that the dilatory conduct claim was preempted by ERISA, we do not address this line of reasoning.

**16.** Ms. Peckham alleges that she never saw these administrative instructions and that she was misinformed as to their content by AAA. However, AAA is not a party to this suit. Accordingly, we do not address whether AAA breached any duty to Ms. Peckham.

**17.** The district court did not address Ms. Peckham's substantial compliance argument, as it held for her on the grounds of equitable estoppel. However, the material facts are not in dispute and our analysis of this claim is dictated by a conclusion of law. Thus, we see no reason to remand for further proceedings on this claim.

may be involved. Such a claim could as easily be a mere mistake or an improper attempt to obtain benefits for which no premium payments have been made. Here the Administrative Instructions set forth a very clear procedure for adding a newborn to an existing policy. It must be done with a Change Notice and, depending on when the Change Notice is received and upon what kind of coverage is provided by the underlying policy, the rights and responses of Gem will vary significantly. Allowing such a claim to substitute for a formal notification of an intent to add a beneficiary under the policy would deprive Gem of the benefit of the clearly defined procedures set forth in the policy. As a matter of law in interpreting this policy we cannot agree that Ms. Peckham's claim for benefits for Kyle was substantial compliance with the notification provision for adding a newborn to her policy.

*Conclusion*

In sum, we hold that AAA's policy with Gem was part of an ERISA plan. We also hold that ERISA preempts Ms. Peckham's claims under the state common law doctrines of estoppel, as well as her state common law claims for punitive damages and damages for emotional distress and breach of duty of good faith and fair dealing. Although we hold that ERISA does not preempt Ms. Peckham's claim under the state common law doctrine of substantial compliance, we reject that claim on its merits.

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Gem, and we REVERSE the district court's award of medical coverage for Kyle Peckham for the period between September 1, 1987 and June 1, 1988.[18] We REMAND for entry of summary judgment for Gem on all claims.

---

18. Because we reverse the award to the Peckhams for this period, we do not consider Gem's cross-claim that the district court erred by refusing to apply the six-month exclusion for pre-existing conditions to the September 1, 1987 award.