Mary Jo CURTISS and RJR Circuits, Inc., a Colorado corporation, Plaintiffs,

v.

UNION CENTRAL LIFE INSURANCE COMPANY, an Ohio corporation, Defendant.

Civ. A. No. 92–F–1915.

United States District Court, D. Colorado.

March 31, 1993.

John P. Serini, John P. Serini, P.C., Denver, CO, for plaintiffs.

Stuart Pack, Stuart Pack, P.C., Denver, CO, for defendant.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving a claim for life insurance benefits. This matter comes before the Court on the motions for summary judgment and motions to strike of Defendant Union Central Life Insurance Company ("the Company"). Removal jurisdiction is based on 28 U.S.C.A. § 1332. The litigants have fully briefed the matter. For the reasons

stated below, the motion for summary judgement is DENIED and the motions to strike are DENIED.

I.

Plaintiffs, RJR Circuits, Inc. ("RJR") and Mary Jo Curtiss, allege that Joseph Curtiss, former General Manager of RJR, was covered by a life insurance policy ("the Policy") purchased by RJR and issued by the Company.[1] Mr. Curtiss' application for life insurance consisted of four documents: (1) Part I—Application for Insurance signed and dated November 18, 1991; (2) Part II—Medical Application to the Union Central Life Insurance Company—Cincinnati, signed and dated November 21, 1991; (3) Amendment of Application signed and dated November 18, 1991; and (4) Amendment of Application signed and dated December 11, 1991. As of December 17, 1991, RJR and Mrs. Curtiss were named equal and primary beneficiaries of the Policy. RJR had also purchased life insurance policies for its two co-owners in 1985 and for two of its other managers on a date not disclosed in the record. On or about January 1, 1992, the Company issued the Policy in the amount of $100,000 insuring the life of Mr. Curtiss.

Joseph Curtiss died on February 29, 1992. Plaintiffs submitted their Statement of Claim and Request for Payment in March 1992. On June 26, 1992, the Company wrote to Mrs. Curtiss and rejected Plaintiffs' claim. The Company informed her that its contestable claim investigation had determined Mr. Curtiss had failed to furnish certain health-related information, specifically, both his December 1991 visits to two doctors, including a urologist, with complaints of abdominal pain, and his doctors' discovery of possible testicular cysts. The Company stated that had Mr. Curtiss provided this information, his application for an insurance policy would not have been approved. The Company cited provisions in the Policy stating the Policy had been granted on the condition that Mr. Curtiss' answers to its questionnaire were true and complete, and that the Company could void the Policy if the answers were inade-

quate. The Company returned all premiums with interest.

Plaintiffs brought this suit alleging state law claims for breach of contract, negligence, and bad faith. In the Joint Stipulated Plan and Schedule for Discovery, Plaintiffs indicated they are also pursuing a bad faith claim under Colorado's Unfair Competition–Deceptive Practices statute, C.R.S. § 10–3–1101 et seq. The Company removed the action to state court on diversity grounds and subsequently moved for summary judgment on grounds the Policy was governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") and that ERISA preempted Plaintiffs' state law claims.

## II. SUMMARY JUDGMENT STANDARD

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 242 (10th Cir.1991); Metz v. United States, 933 F.2d 802, 804 (10th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); Continental Casualty Co. v. P.D.C., Inc., 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Merrick v. Northern Natural Gas Co., 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Allen v. Dayco Prods., Inc., 758 F.Supp. 630, 631 (D.Colo.1990).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. Newport Steel Corp. v. Thompson, 757 F.Supp. 1152, 1155 (D.Colo.1990). All doubts must be resolved in favor of the existence of triable issues of fact. Boren v. Southwestern Bell Tel. Co., 933 F.2d 891, 892 (10th Cir.1991); Mountain Fuel Supply v.

1. All factual recitations contained in this Order have been alleged in the parties' pleadings.

*Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III. ANALYSIS

■ An "employee welfare benefit plan" subject to ERISA must include the following elements ("the statutory criteria") relevant to this action: it is (1) any plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing benefits (5) to participants or their beneficiaries. 29 U.S.C. § 1002(1); *Peckham v. Gem State Mutual of Utah,* 964 F.2d 1043, 1047 (10th Cir.1992); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 738 (7th Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982). The burden is on the party asserting ERISA preemption, here, the Company, to establish the existence of a plan which would invoke ERISA's exclusive remedy provisions. *Terry v. Protective Life Insurance Co.,* 717 F.Supp. 1203, 1205 (S.D.Miss.1989); *Peters v. Boulder Insurance Agency, Inc.,* 829 P.2d 429, 432 (Colo. App.1991), *cert. denied* (April 20, 1992). Plaintiffs dispute the Company's assertion that their Policy fulfills all the elements of an ERISA plan.

### A. The "Plan, Fund, or Program" Requirement

■ A "plan, fund or program" ("a plan") under ERISA is established if "'from the surrounding circumstances a reasonable person can ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedure for receiving benefits.'" *Peckham,* 964 F.2d at 1047 (quoting *Donovan,* 688 F.2d at 1373). A plan also implicates the existence of benefits "whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

■ Because any simple insurance policy must logically include the statutory criteria, most determinations of the existence of a plan hinge on whether the plan requires the employer either to institute an ongoing administrative program that might be subject to conflicting (and therefore preempted) state regulations, or to administer funds that might be subject to abuse or misappropriation. *See, e.g., Peckham,* 964 F.2d 1043, 1048 (holding administrative program shown by employer's keeping records, making regular

payments, and employing two liaisons between insurer and employees); *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 974 (5th Cir.1991) (holding administrative program shown where employer endorsed plan in company booklet referring to it as "our plan," employed full-time plan administrator, collected payments from employees, and remitted payments to insurer); *cf. Coyne*, 482 U.S. at 11, 107 S.Ct. at 2217 (holding no ongoing administrative program established by employer's single lump-sum payment); *Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir.1980) (noting corporation did no more than make payments to a purveyor of insurance); *Peters*, 829 P.2d at 432 (same).

Plaintiffs argue that no "plan" exists in this case because RJR has established no group life insurance policy for its employees—the Policy was an individual life insurance policy covering only Joseph Curtiss; RJR has never represented such a plan to its owners or employees; RJR has never designated an administrator or fiduciary to oversee a group life insurance plan; and neither Plaintiffs nor the Company had ever implemented any procedures to ensure that a "group life" insurance plan complied with the ERISA reporting requirements. The Company merely responds by establishing the existence of the statutory criteria.

■■■ Merely establishing the existence of the statutory criteria, however, is insufficient. Congress has amply expressed its view that "health insurance plans" are broader in concept than simple "health insurance" transactions. *See Taggart*, 617 F.2d at 1211 (noting that in case of employer merely purchasing policy, no trust assets existed for ERISA to protect). In order to distinguish an ERISA-governed plan from an insurance contract, employer involvement in the form of ongoing administration is crucial. We believe the Policy at issue here is more like those in *Coyne*, *Taggart*, and *Peters* than those in *Peckham* or *Hansen*. RJR had no administrative involvement with the Policy

whatsoever; its sole involvement appears to have been to purchase the Policy. Our reasoning is confirmed upon examination of the second, related statutory criterion.

**B. The "Established or Maintained" Requirement**

■■■ The "established or maintained" requirement appears designed to ensure that the plan is part of an employment relationship. *Peckham*, 964 F.2d at 1049, *citing Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) ("Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds."). The employer's degree of participation in the establishment or maintenance of the plan is the central question in this inquiry. *Id.; see also Hansen*, 940 F.2d at 978; *Wickham v. Northwest National Insurance Co.*, 908 F.2d 1077, 1083 (1st Cir.1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). The Court in *Wickham* noted that the crucial factor in determining whether a plan has been established is "whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." 908 F.2d at 1083.

We do not believe RJR's involvement in the Policy was sufficient to render the Policy an "established" or "maintained" plan under ERISA. In *Taggart*, for example, the Court of Appeals for the Fifth Circuit held ERISA does not regulate "bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers, or assumes responsibility for the policy or its benefits." 617 F.2d at 1211. Here, RJR's only involvement, as mentioned above, was to purchase the policy; it assumed no other role or responsibility. RJR did not formally offer policies as a benefit to its employees,[2] did not negotiate the terms of the Policy either as an entity[3]

---

2. While RJR did have five policies in effect for the co-owners and senior management, the policies were purchased separately and years apart.

3. Indeed, as evidence that the insurance contract was an individual one, the Company rated Mr. Curtiss in a higher actuarial category and charged RJR a correspondingly higher premium in consideration of the higher risk.

or as part of the other four policies, did not hold the policies out as a benefit of employment, did not express its intention to payment of the premiums on a regular and long-term basis, and performed no administrative tasks after the initial payment. *Cf. Peckham,* 964 F.2d at 1049 (employer joined insurer group to get insurance for employees, purchased insurance for all employees, and listed insurance in company manual as employment benefit); *Hansen,* 940 F.2d at 978 (employer assumed some responsibility for administration of program and signalled intent to provide benefits to employees, including booklet encouraging participation in plan). "[I]f an employer does no more than purchase insurance for her employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, she has not established an ERISA plan." *Kidder v. H & B Marine, Inc.* 932 F.2d 347, 353 (5th Cir. 1991); *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 242 (5th Cir.1990).[4] *See also Donovan,* 688 F.2d at 1373 (holding "purchase of a policy or multiple policies *covering a class of employees* offers substantial evidence that a plan has been established") (emphasis added).

The Colorado Court of Appeals, in a case almost identical to the one at bar in its relevant facts, has also held that merely paying insurance premiums does not establish the requisite employment relationship. *Peters,* 829 P.2d at 432–33. In *Peters,* the Court of Appeals noted the insurance company had failed to present evidence showing that the employer "maintained a significant administrative role in the operation of the group insurance plan" that it "possessed ... control, or right of control over any decisions made regarding the handling of the trust and its administration," or that its payments were

part of any "continuing policy of providing benefits to its employees." *Id.* at 432–33.[5] The Court affirmed the trial judge in his refusal to dismiss the plaintiff's state law claims as preempted by ERISA.

Accordingly, under the facts presented, we cannot find as a matter of law that the Policy was governed as a "plan" under ERISA and therefore Plaintiffs' state law claims are not preempted. In the Company's motions to strike Plaintiffs' jury demand and Plaintiffs' claims for compensatory and punitive damages, the Company relies on the existence of an ERISA-governed plan. The motions to strike, therefore, must also be denied.

## IV.

Accordingly, it is ordered that:

(1) Defendant the Union Life Insurance Company's Motion to Dismiss and/or For Summary Judgment, filed January 27, 1993, is DENIED.

(2) Defendant's Motion to Dismiss Plaintiffs' Claims for Compensatory and Punitive Damages, filed January 27, 1993, is DENIED.

(3) Defendant's Motion to Strike Plaintiffs' Jury Demand, filed January 27, 1993, is DENIED.

4. The cases cited in the Company's reply are distinguishable. *See James v. National Business Systems,* 721 F.Supp. 169 (N.D.Ind.), *rev'd. on other grounds,* 924 F.2d 718 (7th Cir.1991) (employer offered plan as enticement to incoming senior management and retention incentive to existing management, developed plan in conjunction with insurance consultant, solicited executives' participation, and paid premiums); *Questech v. Hartford Accident and Indemnity Co.,* 713 F.Supp. 956 (E.D.Va.1989) (employer purchased

plan for employees, negotiated all individual policies with agent, and was sole beneficiary).

5. Congress' concern with abuse of employees' trust assets and the Supreme Court's concern in *Morash* with "accumulated funds" are also inapposite where there are no funds held or controllable by the employer. Indeed, here it is the employer (against whose abuse of assets ERISA provided protection) who is allied with the beneficiaries against an insurer.