**Randy L. THOMAS and Retta E. Weiss–Thomas, Plaintiffs,**

v.

**HEALTHPLAN SERVICES, INC. and United Healthcare Insurance Company, Defendants.**

No. 99–1055–Civ–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Oct. 8, 1999.

Raymond T. Elligett, Jr., Schropp, Buell & Elligett, P.A., Tampa, FL, Scott A. Weathers, Huffer & Weathers, P.C., Indianapolis, IN, Harry A. Wilson, Jr., Wilson, Kehoe & Winingham, Indianapolis, IN, for Randy L. Thomas, plaintiffs.

Kirk M. Gibbons, Elizabeth A. Pereira, Chorpenning, Good, Gibbons, Cohn & Bello, Tampa, FL, for Healthplan Services, Inc., successor by merger to Consolidated Group, Inc., defendants.

## ORDER ON MOTIONS

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following motions:

Dkt. 4 Motion to Strike Demand for Jury Trial

Dkt. 13 Response

Dkt. 5 Motion to Dismiss (Healthplan Services)

Dkt. 12 Response

Dkt. 6 Motion to Dismiss (United Healthcare)

Dkt. 12 Response

Dkt. 11 Notice of Supplemental Authority

Dkt. 14 Motion to Remand

Dkt. 17 Response

Dkt. 15 Affidavit

Dkt. 18 Notice of Supplemental Authority

Dkt. 19 Response

### *STANDARD OF REVIEW*

A district court should not dismiss a complaint unless it appears "beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a Plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed. R.Civ.P. 8(a)(2)).

### *FACTUAL BACKGROUND*

Plaintiffs, Randy L. Thomas and Retta E. Weiss–Thomas, originally brought this suit against the Defendants, United Healthcare Insurance Company (the insurer), and Healthplan Services, Inc. (the trust administrator), in the Circuit Court of the State of Florida, in and for the County of Hillsborough. Defendants removed this action to federal court on the basis that the complaint involves a federal question under 29 U.S.C. § 1001, et seq.

While employed by Al Pfeiffer Interior, Inc., Plaintiff enrolled in the company's group insurance plan along with Al Pfeiffer. Plaintiff Thomas has been employed by Al Pfeiffer Interior, Inc. since 1993. Plaintiff and Al Pfeiffer were the only two employees listed on the policy.

On July 21, 1997, Al Pfeiffer received a letter from the Consolidated Group, Inc. (Defendant Healthplan's predecessor by way of merger), explaining that the group policy was scheduled to renew on September 1, 1997. Al Pfeiffer renewed the policy, which included himself and Plaintiff.

Approximately eight or nine months before renewing the policy in 1997, Al Pfeiffer and Plaintiff Thomas agreed that each would individually be responsible for their own portion of the Travelers insurance. Each month Plaintiff Thomas would write a check to the employer, and Al Pfeiffer Interior, Inc. would write a check to Consolidated under Account No. Z41902G. The pleadings are silent as to any employer contribution which predates the 1997 renewal. Plaintiff Thomas was issued an insurance card prior to 1997. The Court

notes that in Answers to Interrogatories, Plaintiff states:

> Originally, Al Pfeiffer indicated to me in conversation that he would provide for our insurance benefits. However, at the time, the company's production level made this offer unrealistic. It was at this time that I began paying my portion of the premiums for insurance coverage.

In early October 1997, Al Pfeiffer received an invoice from Defendant insurance company for the premiums due under the plan for both himself and the Plaintiff. After receiving a check from Plaintiffs for their portion of the dues, Al Pfeiffer accordingly mailed a single check to Defendant insurance company for the premiums due for himself and Plaintiff.

Shortly thereafter, Defendants began denying the medical insurance claims submitted by Plaintiffs. Following the denials, Al Pfeiffer Interior received a letter from Defendant Healthplan stating that the Plaintiffs' policy could not be reinstated. The reason stated was that Defendants did not receive the premium payment due under the Al Pfeiffer insurance plan within the required time. One month later, Defendant Healthplan mailed a check to Al Pfeiffer refunding the premium payment received late.

As a result of the denials, Plaintiffs filed suit against Defendants in state court for breach of contract and bad faith (United Healthcare Insurance Company), and fraud and breach of fiduciary duty (Healthplan Services, Inc.).

Defendants argue that Plaintiffs' state law claims are preempted because Plaintiffs' insurance plan falls within the scope of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. definition of an "employee benefit plan." Therefore, Defendants move to dismiss Plaintiffs' complaint and to strike the demand for jury trial.

In response, Plaintiffs argue that the Al Pfeiffer insurance plan is exempt from ERISA regulation under the safe harbor provision provided in 29 C.F.R. § 2510.3–1(j). Plaintiffs further argue that should this Court determine that the insurance policy does not qualify for exemption provided by the safe harbor provision, that ERISA still does not apply because the policy was not "established or maintained" by the employer, Al Pfeiffer Interior, Inc. Therefore, Plaintiffs move to have the case remanded back to state court.

## DISCUSSION

At issue in this case is whether or not the Plaintiffs' insurance policy qualifies as an "employee benefit plan" as defined by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. To make this determination, the Court must first determine if an ERISA plan exists, if the plan was "established or maintained" by the employer, and lastly if the "safe-harbor" provision provided by 29 C.F.R. § 2510.3–1(j) exempts the insurance policy from ERISA regulation.

Plaintiffs seek to remand on the basis of lack of subject matter jurisdiction. A federal court lacking subject matter jurisdiction over a removed case must remand it, and has no jurisdiction to rule on other pending motions.

After consideration, the Court concludes that the determining factor in this case is whether the employer endorsed the insurance plan selected. The relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employee's point of view.

## I. DOES A PLAN EXIST?

■ It is clearly established that ERISA preempts any actions that relate to employee benefit plans. *See* 29 U.S.C. § 1001(a); *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The statutory definition of an employee benefit plan also includes employee welfare benefit plans. *See* 29 U.S.C. § 1002(3). This section defines an employee welfare benefit plan as:

... any plan, fund, or program which is heretofore or is hereafter established or maintained, by an employer or by an employee organization, or both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...

29 U.S.C. § 1002(1).

▮ In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the court further defined the definition of an "employee welfare benefit plan" by creating a test that determines if a "plan, fund, or program" exists. *See id.* at 1371–73. The test states that "a plan, fund, or program under ERISA is established if, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, class beneficiaries, source of financing, and the procedures for receiving benefits." *Id.* at 1373.

The Court concludes that a reasonable person would have no difficulty in determining the above listed criteria. First, it is obvious that the monies sought through Plaintiffs' medical claims are the intended benefits. Second, it is clear that Plaintiff Randy Thomas is the beneficiary. Third, the facts show that Plaintiffs provided the financing for the policy by furnishing a check for their portion of the premium to Al Pfeiffer Interior, who then wrote a single check to Defendants. Lastly, Plaintiffs demonstrated the procedures for receiving the benefits when Plaintiffs submitted the medical claims to the Defendants. The Court further notes that the policy itself states it is an ERISA plan, and details the employees' rights under ERISA. Therefore, the Court finds that a "plan, fund, or program" does exist under the *Donovan* test.

## II. WAS THE PLAN "ESTABLISHED OR MAINTAINED" BY THE EMPLOYER?

▮ *Donovan* provides that in addition to qualifying as a "plan, fund, or program," the insurance policy must also be "established or maintained" by the employer. *See* 688 F.2d at 1372. In *Curtiss v. Union Cent. Life Ins. Co.*, 823 F.Supp. 851 (D.Colo.1993), the court stated that ERISA does not regulate "bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers, or assumes responsibility for the policy or its benefits." *Id.* at 855, *citing Taggart Corp. v. Life & Health Benefits*, 617 F.2d 1208, 1211 (5th Cir.1980). The *Curtiss* court held that the employer did not "establish or maintain" the policy because it did not partake in any of the activities mentioned in *Taggart*. *See Curtiss*, 823 F.Supp. at 855. Among other factors, the court more specifically explained that the employer did not perform any administrative tasks associated with the policy.

▮ In the present case, Al Pfeiffer Interior did participate in the administrative duties of the policy. Al Pfeiffer Interior chose the coverage option upon renewal. Al Pfeiffer Interior was responsible for forwarding Plaintiffs' premiums to the insurer, and also held the responsibility of informing the Plaintiffs of all requirements associated with the plan. These requirements included informing Plaintiffs that the policy was up for renewal, informing the Plaintiffs that their policy was no longer in effect, and forwarding the refund check issued by the Defendants back to Plaintiffs. These functions performed by the employer were essential to the proper administration of the policy.

The Court concludes that Al Pfeiffer Interior did "establish and maintain" the policy because Al Pfeiffer Interior participated in the insurance plan's administrative duties.

### III. DOES THE PLAN FALL WITHIN THE SAFE–HARBOR PROVISION?

■ In Plaintiffs' motion to remand, Plaintiffs argue that even if an employee welfare benefit plan does exists, the insurance plan is exempt from ERISA regulation under the "safe-harbor" provision provided by 29 C.F.R. § 2510.3–1(j). Plaintiffs argue that an "employee benefit plan" does not automatically qualify a "plan, fund, or program" as an ERISA plan. *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991). The thrust of the Plaintiffs' argument here is that the insurance plan at issue meets the four required elements of the "safe-harbor" provision, and is exempt from ERISA regulation.

To qualify for the "safe harbor" exception, a plan must satisfy the following requirements:

    (1) No contributions are made by an employer or employee organization;

    (2) Participation [in] the program is completely voluntary for employees or members;

    (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

    (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).

After consideration, the Court concludes that the insurance plan in this case appears to meets criteria two and four. As to criteria one, the Court concludes that at the time the insurance was originally offered, the employer made contributions, but later those contributions ceased, and each member paid for his own premium.

The Court finds that the insurance plan does not meet criteria three. Criteria three requires that an employer seeking the "safe-harbor" exemption refrain from any activities other than allowing the insurer to publicize the program and collecting premiums. *See Butero v. Royal Maccabees Life Insurance Company,* 174 F.3d 1207, 1213–14 (11th Cir. May 10, 1999).

In *Butero,* the court held that the employer did not qualify for the "safe-harbor" exemption because the employer showed significant involvement in the program. *See id.* at 1213–14. The *Butero* court found that the employer participated in several aspects of the plan such as picking the insurer, deciding on the plan's key terms, and retaining the power to alter compensation reduction for tax purposes. *See id.* at 1213–14.

As in *Butero,* Al Pfeiffer had significant involvement with the plan that went beyond simply allowing the insurer to publicize the program and collecting premiums. *See id.* at 1213–14. The evidence shows that Defendant insurer mailed all correspondence pertaining to the maintenance of the policy to Al Pfeiffer Interior. This correspondence included several important components of the policy such as the letter requesting the renewal of the policy, the invoices for the policy, which included deciding among coverage options, and the letter informing Al Pfeiffer Interior that the insurer would not reinstate the Plaintiffs' policy. It was therefore Al Pfeiffer Interior's duty to maintain and upkeep the policy for Plaintiffs. This involvement clearly goes beyond allowing the insurer to publicize the program and collecting premiums and, more importantly, demonstrates Al Pfeiffer Interior's control over the policy itself. In addition to this involvement, Plaintiffs offer no evidence that Al Pfeiffer did not select the insurer by himself.

The court in *Byard v. QualMed Plans for Health, Inc.,* 966 F.Supp. 354 (E.D.Pa.

1997) held that administrative functions performed by the employer did not defeat the "safe-harbor" provision. In *Byard*, the employer performed several administrative duties for the insurance plan that included record keeping, documentation of eligibility, notification of cancellation and reinstatement of benefits, and discussing eligibility information. *See id.* at 359. This finding is distinguishable from the facts in the present case. In the present case, Al Pfeiffer Interior participated in more than mere administrative duties. Al Pfeiffer Interior did more than simply filing papers and discussing eligibility, it operated as the sole contact for the policy. All correspondence relating to the overall operation and existence of the policy went through Al Pfeiffer Interior. This included the policy renewal form, the policy invoices, and the letter informing Al Pfeiffer that the policy would not be reinstated, and the refund check returned after the Plaintiffs' policy was not reinstated. Plaintiffs in the current case were completely reliant upon Al Pfeiffer Interior for the maintenance of their insurance policy.

Following the above reasoning, the Court finds that Al Pfeiffer Interior's involvement with the insurance plan went beyond allowing Defendant insurer to publicize and collecting dues. The Court further finds that Al Pfeiffer Interior's administration of the plan resulted in significant plan involvement, and this puts the insurance plan outside the safe harbor provision.

For the reasons stated above, the Court concludes that the insurance policy is a "plan, fund, or program" that was "established or maintained" by the employer. Additionally, the Court finds that the plan does not qualify for the "safe-harbor" provision. Therefore, ERISA governs the insurance plan and thus, preempts all state law claims against both Defendants. The Court also concludes that because the state law claims are preempted, the demand for jury trial is no longer applicable. Accordingly, it is

**ORDERED** that Plaintiffs' Motion to Remand (Dkt.14) is **denied;** that the Motions to Dismiss (Dkts.5, 6) are **granted,** without prejudice. Plaintiff may file an amended complaint within twenty days. Defendant's Motion to Strike Jury Trial (Dkt.4) is **granted.**

**DONE AND ORDERED.**