**G. A. HARVEY, Appellee,**

v.

**The NATIONAL BANK OF COMMERCE OF TULSA, OLKAHOMA, a National Banking Association, Appellant.**

**No. 43886.**

Supreme Court of Oklahoma.

July 25, 1972.

As Corrected July 31, 1972.

Rehearing Denied Nov. 28, 1972.

Robert S. Rizley, Crawford, Rizley & Pritchard, Tulsa, for appellee.

Hall, Estill, Hardwick, Gable & Collingsworth, James C. T. Hardwick, Thomas D. Gable, Tulsa, for appellant.

WILLIAMS, Justice.

Plaintiff in the trial court, G. A. Harvey, was for about 34 years an employee of the defendant, National Bank of Commerce of Tulsa. He took "early retirement" in 1963, at which time he was an assistant vice president earning $875.00 per month. He was about 63 years of age at the time, and his retirement pay, which included a small amount for insurance premiums, amounted to $250.00 per month. Defendant bank paid the retirement pension regularly until December, 1967, at which time the payments were discontinued. Some months later plaintiff began this action for the recovery of an amount equal to what he would have received if payments had continued till his death, based on his life expectancy.

Defendant bank was what may fairly be described as a family-controlled corporation. At the time of plaintiff's retirement its president was Mr. J. D. McBirney; McBirney was also chairman of the bank's board of directors, and he, with other members of the McBirney family and some family trusts (of which he was trustee) owned almost 80% of the outstanding stock of the bank.

The bank had no formal, funded retirement plan for its employees and plaintiff's rights rest upon an alleged oral agreement with McBirney, to be detailed hereinafter.

About two months after Harvey retired, the McBirney interests were sold pursuant to the terms of a contract drawn by the personal attorney of Mr. McBirney. In paragraph 4(D) of the contract, the buyers specifically agreed that the "present pension plan for employees fifty years of age or over which matches that pension plan employed by the National Bank of Tulsa for employees of that age group" would be kept in effect. In paragraph 5, it was agreed that the "officers, employees and pensioned employees of the bank" were, in effect, third-party beneficiaries under the contract which, as to them, "may not be rescinded except as herein provided".

For a little over four years after the buyers took control of the bank, plaintiff Harvey's retirement pension was regularly paid; during that time the payments to Harvey, and to other former long-time employees similarly pensioned, were annually approved by the bank's board of directors. As we have noted, the payments to plaintiff were stopped in December, 1967.

When Harvey later began this action, he sued the bank and also the six men constituting the group who had taken control of the bank in 1963, and who, as buyers, had signed the contract referred to above. His petition contained no allegations of fact with regard to the agreement with McBirney upon which his claims rested and may fairly be said to have been based upon the contract for the purchase of the McBirney interests, and particularly para-

graphs 4(D) and 5 thereof, and any duties resting upon the bank and its new owners implicit in that contract.

For reasons not shown in the record before us and immaterial to this appeal, summary judgments were rendered in favor of the individual defendants and the case later went to trial to the court and a jury against the bank only.

Before trial, however, and in response to some "anticipatory" defensive allegations in the amended answer of defendant bank, plaintiff filed a reply which included detailed allegations of fact concerning the oral contract between plaintiff Harvey and McBirney as distinguished from the written contract of sale of the bank by the McBirney interests to the new owners. At the conclusion of the evidence, the case was taken from the jury and plaintiff's motion for a directed verdict was sustained and judgment was entered in his favor. Defendant bank appeals and argues six propositions.

The first is that there was no consideration for the alleged contract entered into by Harvey and McBirney at the time of Harvey's retirement.

Plaintiff's testimony with regard to the contract with McBirney was uncontradicted. Briefly summarized, his testimony was that McBirney broached the subject in December, 1962. At that time he asked Harvey if he would be interested in taking early retirement, at the same time making it clear that the step would be entirely voluntary on Harvey's part, and that "I'm not going to force anybody to retire". In response to questions by Harvey after he had indicated a possible interest in retiring, McBirney said that he would be paid on the basis of his salary and years of service, "the same as they do at the National Bank of Tulsa", and that the payments would be for life. In response to a question as to what would happen if McBirney "sold the bank of something", McBirney said "If I do, I will see that there's a contract written that you will be protected". McBirney said also that he had already had Mr. Hill,

the bank cashier, check with the National Bank of Tulsa to see what a retiring employee of that bank with length of service and salary comparable to Harvey's would be paid, and that it would amount to $250.-00 per month. At the time of these conversations, Harvey already knew that other National Bank of Commerce (defendant's) employees had previously been retired at payments they would have received under the National Bank of Tulsa plan. Hill, who at the time of trial was cashier for another bank, corroborated plaintiff's testimony as to the inquiries he made at McBirney's request, and also said that the payments under the National Bank of Tulsa plan were for the life of the retiree.

Plaintiff's testimony was also supported by that of Mr. Wiedemann, another former long-time employee of the National Bank of Commerce, who at time of trial was president and chairman of the board of still another Tulsa bank. He said that during the time McBirney controlled the defendant bank, it had a retirement "plan of sorts". Such plan was non-funded and non-contributory; under it, when an employee retired, McBirney would ascertain what the retirement payments would be under the funded National Bank of Tulsa plan for its employee similarly situated and that would be the amount paid to the defendant's retiring employee, for life. The witness explained that because the National Bank of Commerce was the second-oldest bank in Tulsa, with many employees who were "up in years", a funded plan would have been very costly. The payments paid under the plan followed were charged to "the regular expense account of the bank".

Despite defendant bank's arguments to the contrary, as hereinafter noted, it is our opinion that the testimony with regard to the terms of the agreement between Harvey and McBirney, who was deceased at the time of trial, was uncontradicted. It was directly corroborated by the uncontradicted testimony of Hill, the cashier, that he did make the inquiries at the National Bank of Tulsa at McBirney's request, at the time of

the discussions between Harvey and McBirney.

■ From comments of the trial judge in the record before us, it is clear that he considered Mr. McBirney, the bank's president, board chairman and principal stockholder, to be the bank's alter ego at the time he made the agreement with Harvey, and that McBirney's agreement was, in law, the agreement of the bank. It was also his position that Harvey's "forbearance from working" was a sufficient consideration for McBirney's promise.

We agree with both conclusions. Defendant bank does not deny that McBirney was the bank's alter ego.

It is argued, however, that since Harvey had no contract of employment for any particular length of time and could have been discharged at will by McBirney, his act in taking early retirement was not a sufficient consideration to make McBirney's promise binding, and that the retirement pension was a mere gratuity, terminable at will.

We do not agree. Under 15 O.S.1971, § 106, a good consideration for a promise may consist of " * * * any prejudice suffered or agreed to be suffered by such person [the promisee], other than such as he is at the time of consent lawfully bound to suffer * * * ". Under the uncontradicted evidence in the record before us, it is clear that Harvey's decision to retire was entirely his own, and that he would not have been discharged if he had not retired. His act in taking early retirement, thus reducing his income from $875.00 per month to $250.00 per month, was therefore not a prejudice that he was "lawfully bound to suffer", within the meaning of § 106.

■ Under these circumstances, Harvey's act in taking early retirement amounted to an acceptance of McBirney's promise of a retirement pension and made it binding, resulting in a valid unilateral contract. See 17 Am.Jur. Contracts, §§ 5 and 96; 17 C.J.S. Contracts § 74, p. 757; Haffner v. Commerce Trust Co., 184 Okl. 212, 86 P.2d 331, 120 A.L.R. 1057.

■ In its second proposition, defendant bank argues that plaintiff's petition failed to state facts showing an obligation of the bank to Harvey and was therefore insufficient. The argument is addressed solely to the contents of the petition which, as we have noted, contained no allegations of fact with regard to the agreement between Harvey and McBirney. However, as has also been noted, plaintiff's reply did contain affirmative allegations as to what promises from McBirney to Harvey were included in that oral agreement. The case was tried by the court and the parties on that basis. It is elementary that the issues are made up by all of the pleadings together with the evidence not objected to; 12 O.S.1971, § 552, and §§ 311, 312 and 317 and that the determination of the issues proffered by plaintiff is made by an examination of all of his pleadings and the described evidence.

Defendant bank also argues under three propositions that, for various reasons, plaintiff's Exhibit A (the written contract for the purchase of the McBirney interests) cannot serve as the basis of a cause of action against the bank. It is unnecessary to consider these propositions in detail, because the case was clearly tried on the theory that the bank's liability was based upon the executed oral agreement between Harvey and McBirney, and not upon the described written contract for sale of the bank. Plaintiff originally pleaded that written contract in an obvious effort to predicate liability of the individual defendants thereon, but as stated above summary judgments were rendered in their favor. When, at the later trial as against the bank, defendant objected to the introduction in evidence of the written contract, plaintiff's counsel stated that it was offered "as an admission on the part of the chief executive officer at that time" (McBirney), and it was received on that basis only.

In its last proposition, defendant bank argues that there was competent evidence that the pension payments were mere gratuities, terminable at will by the bank, and that it was therefore error to sustain plaintiff's motion for directed verdict.

The evidence referred to in argument under this proposition was given for defendant by Mr. R., its senior vice president and secretary of its board of directors for several years; and Mr. D., who was an attorney who was a member of the group of buyers who purchased the McBirney interests pursuant to the written contract, and who represented the other buyers in connection therewith.

Fairly summarized, the testimony of Mr. R., who became secretary to the board when the new buyers took control, was of effect that so far as he knew the bank had no plan and "no definite policy" with regard to the retirement of its employees; that the new directors annually reviewed the retirement payments being made, and that their annual approval of the continuance of the payments was for one year at a time.

Mr. D. testified that in his investigations prior to the purchase of the McBirney interests, he determined that there was no written retirement plan binding the bank to make payments to retired employees, and that, although he was aware of the specific references in the written contract to the retirement plan of the National Bank of Tulsa, he made no effort to determine the details of that plan, or whether payments under it were made for life. He testified that "it was just—it was my understanding * * *" that the retirement payments being made were "on an annual basis, subject to annual review".

We do not agree that the evidence above summarized, together with documentary evidence consisting of the minutes of the board reflecting their annual approval of the retirement payments, constitutes circumstantial evidence that Harvey had no binding agreement with McBirney, the bank's alter ego, for the payment of retirement benefits to him for life.

Harvey's rights rested on the quite specific contract with McBirney, and not upon any retirement "plan or policy". Mr. R's testimony of effect that to his knowledge there was no such policy was therefore immaterial on the decisive issue of the case. For the same reason, it is immaterial that the new board of directors may have thought that they had authority to terminate the payments at will, since Harvey's rights vested at the time he accepted McBirney's offer and retired and thereby made the promise of retirement payments for life binding.

The authorities cited by defendant under this argument are not in point. Principal reliance is placed upon Going v. Southern Mill Employees Trust, Okl., 281 P.2d 762. That case involved a written plan for employee benefits for which a trust had been created. By the plain terms of the trust, benefits were payable only to employees with five years' service, with the proviso that in case of disability, the trustees, in their sole discretion, could award benefits to any employee. Plaintiff in that case had only two years' service and had voluntarily retired because of disability, and it was not claimed that the trustees had made an award of benefits to him. This Court's holding in that case that the employee was entitled to no benefits is of no assistance in the present situation.

In this view of the described evidence, the trial court did not err in taking the case from the jury and in directing a verdict for plaintiff.

The judgment of the trial court is affirmed.

BERRY, C. J., and JACKSON, IRWIN and LAVENDER, JJ., concur.

DAVISON, V. C. J. and HODGES, J., concur in result.