39 F.3d 1192
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Richard E. LOHMANN, Plaintiff-Appellant,
v.
GREEN BAY PACKAGING, INC.; Green Bay Packaging, Inc., as
successor of Southwest Packaging, Inc; Green Bay Packaging,
Inc., as Administrator for the Retirement Plan for office
and Salaried Employees of Green Bay Packaging, Inc., and
Subsidiaries; the Retirement Plan for Office and Salaried
Employees of Green Bay Packaging, Inc., and Subsidiaries;
and R.P. Laster, Defendants-Appellees.
 Nos. 93-5037, 94-5068.
 United States Court of Appeals, Tenth Circuit.
 Nov. 7, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before KELLY and McKAY, Circuit Judges, ROGERS, District Judge.[2]
 
 
 2
 In No. 93-5037, Plaintiff-Appellant Richard E. Lohmann appeals from a grant of summary judgment in favor of Defendants-Appellees on his ERISA and state law claims arising out of his employment on salary with South West Packaging, Inc. from 1974-1987. In No. 94-5068, Mr. Lohmann appeals from the district court's denial of his motion to vacate the judgment based upon Fed.R.Civ.P. 60(b)(2) (newly discovered evidence) and (b)(3) (fraud, misrepresentation or other misconduct of an adverse party). Our jurisdiction arises under 28 U.S.C. 1291 and we affirm.
 
 Background
 
 3
 South West was a wholly-owned subsidiary of Green Bay Packaging Inc. until 1987 when it was merged into Green Bay. Mr. Lohmann received benefits under the Green Bay pension plan for his service after the merger. Upon learning of the parent-subsidiary relationship between South West and Green Bay, Mr. Lohmann sought pension benefits from Green Bay based upon his service with South West from 1974-87. He based his claim upon a 1972 Agreement between Green Bay and three individual Defendants[3] (referred to as the "Team" or management team) that is best described as an incentive compensation agreement. I Aplt.App. at 68. Although the three Defendants became directors of South West, they entered the 1972 Agreement solely in their individual capacities and simultaneously entered into employment agreements with Green Bay. I Aplt.App. 69, 76.[4]
 
 
 4
 The 1972 Agreement provided in pertinent part:
 
 V. Fringe Benefits
 
 5
 5.1 Hourly employees of the Box Company will be covered under a pension, life insurance, and accident and health insurance plans for hourly employees. Salaried employees will be covered under the Corporation's [Green Bay's] existing retirement, life insurance, and accident and health insurance plans for salaried employees. The cost of such plans will be considered part of the plant operational expense.
 
 
 6
 Id. at 74. The Agreement contained an integration clause and was binding on Green Bay and its successors, as well as the Defendants and their personal representatives. Id. at 76. Mr. Lohmann's claim was denied administratively by the Green Bay Plan administrator. The district court granted summary judgment in favor of the Defendants, reasoning that the 1972 Agreement was not a plan document that "established or maintained" a pension plan for the salaried South West employees, nor was it an amendment to the Green Bay plan. Assuming for the purpose of argument that Mr. Lohmann was a third-party beneficiary of the 1972 Agreement, the district court rejected state law contract claims as barred by limitations.
 
 
 7
 Mr. Lohmann contends that the 1972 Agreement (1) required Green Bay to cover the salaried employees of South West under the Green Bay plan, (2) established a pension plan for those South West employees under 29 U.S.C. 1002(2), and (3) constituted a Plan Document amending the Green Bay Plan. He also argues that any state law claims are not barred by a limitation period because Green Bay did not disclose either the Agreement or the status of South West as a wholly-owned subsidiary.
 
 
 8
 During the pendency of No. 93-5037, Mr. Lohmann filed his Fed.R.Civ.P. 60(b)(2) and (3) motion. He claimed that certain corporate minutes of Green Bay, subject to a confidentiality order in related state court litigation, should be reviewed by the district court for its information and to prevent potential misrepresentation. The lawyer familiar with the minutes supplied a like affidavit, but the substance of the minutes was not disclosed. Mr. Lohmann's conclusion is that the corporate minutes will show that the Green Bay board of directors approved the 1972 Agreement (or its extension) or otherwise indicated that the Green Bay Plan applied to South West employees. The district court denied Mr. Lohmann's Rule 60(b)(2) and (3) motion, remarking that it was prohibited from granting the relief requested because the case was on appeal, citing 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice 1/260.30 (2d ed.1993). II Aplt.App. (No. 94-5068) 70-71.
 
 
 9
 Mr. Lohmann argues that the district court failed to exercise its power to review the Rule 60(b) motion because it believed that it did not have jurisdiction.
 
 Discussion
 
 10
 Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although we view the evidence and draw any inferences in a light most favorable to Mr. Lohmann as the party opposing summary judgment, he must identify sufficient evidence which would require a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Only disputes about material facts preclude summary judgment. Anderson, 477 U.S. at 248. Defendants, as movants, have the burden of specifying those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If movants establish their entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. See Anderson, 477 U.S. at 251. See also Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 n. 5 (10th Cir.1992) (where material facts are undisputed, it is a legal question whether a plan has been established or maintained under ERISA). Movants are not required to provide evidence negating an opponent's claim. Celotex, 477 U.S. at 323.
 
 
 11
 This is a civil enforcement action under ERISA, 29 U.S.C. 1132, with a pendent state law contract claim. The two are intertwined, however, because the Agreement was entered into prior to January 1, 1975. While 29 U.S.C. 1144(a) provides for ERISA preemption of state law pertaining to employee benefit plans as of January 1, 1975, 1144(b)(1) provides that the preemption provision "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." The ERISA cause of action arose in 1991 when Mr. Lohmann was denied benefits. See Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir.1990). However, the 1972 Agreement is the "act or omission" which gives rise to Mr. Lohmann's claims so state law is relevant, notwithstanding that the Green Bay Pension plan had a ten-year vesting requirement, II Aplt.App. 382, that Mr. Lohmann would not have satisfied until 1984. See Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1352 (8th Cir.1980). See also Jameson v. Bethlehem Steel Corp. Pension Plan, 765 F.2d 49, 52 (3d Cir.1985). But see Peckham v. Board of Trustees, 653 F.2d 424, 426 n. 4 (10th Cir.1981). We reach the same result under either state or federal law.
 
 A.
 
 12
 Prior to ERISA preemption, Oklahoma recognized an enforceable right in a pension plan funded by employer contributions. See Graham v. Hudgins, 540 P.2d 1161, 1164-65 (Okla.1975); Harvey v. National Bank of Commerce, 504 P.2d 424, 427 (Okla.1972). However, this is far from the usual case in which a plan or some type of deferred compensation arrangement is made known to employees and becomes part of the terms of employment. See Modzelewski v. RTC, 14 F.3d 1374, 1376-77 (9th Cir.1994). To prevail in this case, Mr. Lohmann must prove that he could have enforced the 1972 Agreement as a third-party beneficiary.
 
 
 13
 A third-party beneficiary may enforce a contract,[5] although not named in the contract or a party to it. Shebester v. Triple Crown Insurers, 974 F.2d 135, 138 (10th Cir.1992). The inquiry is one of contract construction: did the named parties intend, as manifested in the express terms of the contract, that a third party receive a judicially enforceable benefit? Great Plains Fed. Sav. & Loan v. Dabney, 846 P.2d 1088, 1093 (Okla.1993); Keel v. Titan Constr. Corp., 639 P.2d 1228, 1231 (Okla.1982). "The benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance." Oil Capital Racing Assn, Inc. v. Tulsa Speedway, Inc., 628 P.2d 1176, 1179 (Okla. Ct.App.1981).
 
 
 14
 We are convinced, and the record before us is undisputed, that the parties did not intend that all future salaried employees of South West receive a judicially enforceable right to coverage under the Green Bay plan based upon the 1972 Agreement. The 1972 Agreement is a business plan between Green Bay and the management Defendants in their individual capacities. Nowhere does it mention that it is for the benefit of the very large class of future employees of South West.
 
 
 15
 This case is readily distinguishable from Oil Capital Racing Ass'n where auto race drivers were held to be third-party beneficiaries of a contract between a quasi-governmental entity and its licensee of an auto racing track. In that case, the contract expressly stated that the entity was interested in the amounts paid drivers and also required a minimum amount of pay for drivers (40% of gross admission). Id. at 1178. Here, in contrast, we have nothing but a very general statement that salaried employees would be covered under existing employee benefits plans and that the cost of employee benefits plans would be part of the plant's operational expense. Nowhere in the 1972 Agreement is there mention of any other compensation or terms of employment of the future salaried employees. We conclude that the primary beneficiaries of the 1972 Agreement are the parties--Green Bay contracted for the expertise of the management team Defendants who in turn were promised incentive compensation based on performance. The fact that fringe benefit expense for salaried employees would be deducted from revenue in determining incentive bonus for the management team Defendants does not confer third-party beneficiary status on the all future salaried employees of South West.
 
 B.
 
 16
 We reach the same result under ERISA. In Peckham, 964 F.2d 1043, we considered what constituted an ERISA plan[6] under 1002(1) and relied upon Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982) (en banc). "At a minimum, ... a 'plan, fund or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." Donovan, 688 F.2d at 1372. A plan must not only be established or maintained, but also established or maintained for a specific purpose such as providing for retirement income. Id. See also 29 U.S.C. 1002(2)(A)(i) & (ii). A formal written plan is not a prerequisite for establishing or maintaining a plan, but "[a] decision to extend benefits is not the establishment of a plan or program." Id. at 1373. While "[a]cts or events that record, exemplify or implement" a decision to extend benefits are direct or circumstantial evidence of establishing or maintaining a plan, "it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." Id. We have held that the " 'established or maintained' requirement [is] to ensure that the plan is part of an employment relationship." Peckham, 964 F.2d at 1049. "In summary, a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan, 688 F.2d at 1373.
 
 
 17
 Applying these principles, we conclude that Mr. Lohmann has failed to carry his burden on summary judgment of adducing sufficient evidence that a retirement plan for South West employees was really in effect. This case is far removed from those in which an employer entered into an employment agreement with an employee providing for some type of deferred compensation and that employee later claims that the employment agreement resulted in a pension plan "established or maintained" by the employer. See Modzelewski, 14 F.3d at 1376-77; Bogue v. Ampex Corp., 976 F.2d 1319, 1321-23 (9th Cir.1992), cert. denied, 113 S.Ct. 1847 (1993). Here, Mr. Lohmann was not a party to the 1972 Agreement and was unaware of its existence during his employment with South West.
 
 
 18
 Moreover, the reference to the Green Bay retirement plan in the 1972 Agreement is insufficient to establish that Green Bay "established or maintained" a plan for South West in which Green Bay would cover South West's salaried employees. See Carver v. Westinghouse Hanford Co., 951 F.2d 1083, 1087 (9th Cir.1991) (discussion of plan in newsletters and preliminary summary booklet did not make the plan a reality prior to its formal adoption; summary judgment upheld), cert. denied, 112 S.Ct. 3036 (1992). Even where it would be possible to ascertain benefits, beneficiaries, funding and procedures, there still must be some evidence that "the plan was intended to be in effect and not just be something for future adoption." James v. National Business Sys., 924 F.2d 718, 720 (7th Cir.1991). Intent matters.
 
 
 19
 Although Mr. Lohmann argues that the 1972 Agreement constitutes an amendment to the Green Bay plan extending participation to South West salaried employees, the uncontroverted evidence is to the contrary. Green Bay has amended the Plan only through formal written documents clearly specifying the intent to amend, and has not done so by means of an agreement with third-parties. I Aplt.App. 41-42; II Aplt.App. 453-56, 457-65, 466-67. During all relevant time periods, the Plan has specified clearly which of its affiliated entities participate in the Green Bay Plan and South West has never been included. II Aplt.App. 383-84, 412-13. To saddle the Green Bay Plan with an entire new class of participants with no evidence suggesting that the Green Bay ever intended such a result is directly contrary to the purposes of ERISA and the interests of the current plan participants. See 29 U.S.C. 1001(b); Miller v. Coastal Corp., 978 F.2d 622, 624-25 (10th Cir.1992) (pension plan may not be modified through informal oral or written communications), cert. denied, 113 S.Ct. 1586 (1993).
 
 
 20
 The only evidence before us is one sentence in the 1972 Agreement, an internal undistributed document, which never purported to operate on the Green Bay Plan, thus distinguishing this case from Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127 (9th Cir.1991), where Board resolutions concerning plan termination, accrued benefits and distribution of plan assets were deemed the functional equivalent of plan amendments. Not a single other written or oral representation concerning South West's alleged participation in the Green Bay plan has been presented. No funding mechanism for South West employees to participate in the Green Bay plan exists. No benefits from the Green Bay plan to South West salaried employees were actually paid. No one proceeded with the understanding that South West was participating in Green Bay's plan.
 
 
 21
 The dissent suggests that the 1972 Agreement created a "South West plan" which incorporated the terms of the Green Bay plan as it existed in 1972. Dissent at 3 & 6. This is untenable. The sentence at issue in the 1972 Agreement refers to coverage under the "Corporation's existing retirement ... plans for salaried employees." I Aplt.App. 74. The "Corporation" is defined as Green Bay. Id. at 67. The 1972 Agreement does not mention "South West," referring to the new entity as the "Box Company." Id. at 68. Thus, the 1972 Agreement did not create a "South West plan" which borrowed the terms of the Green Bay plan. Rather, South West later established a separate "Pension Retirement Plan" whereby South West would match monthly $5.00 contributions made to an IRA by employees after one year of service. See II Aplt.App. 345. It is uncontroverted that Mr. Lohmann participated in this plan. I Aplt.App. 141.
 
 
 22
 In the event we reversed the district court's grant of summary judgment, Mr. Lohmann requested that we grant his motion to amend the complaint and require the trial court to reconsider its denial of his request to reopen discovery. Aplt. Br. at 45-49. We have considered the carefully-drafted amended complaint in deciding this appeal, but it cannot overcome Mr. Lohmann's lack of evidence to substantiate his assertions. As for the denial of the request to reopen discovery, the district court did not abuse its discretion. Finally, we need not reach the breach of duty claims given our resolution.
 
 C.
 
 23
 As for the district court's denial of the Rule 60(b) motion, the district court cited a treatise which correctly indicates that in the Tenth Circuit a district court lacks the power to grant the motion while the case is on appeal, but does have the power to consider and deny the motion. Moore's Federal Practice 1/260.30. The district court observed that it could not grant the motion, and then proceeded to deny it.
 
 
 24
 The district court exercised its discretion in a permissible manner. The Rule 60(b) motion should be viewed in the context of the opportunity for discovery in this case. Given the complete generality of the discovery request for documents, and that corporate minutes pertaining to a pension plan would hardly be a novel item, Plaintiff has not shown diligence in discovering those minutes. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 727 (10th Cir.1993) (Rule 60(b)(2) requirements). Nor does the assertion by counsel in state court litigation that the minutes "may be relevant" suffice for a showing that the outcome would probably be different with the newly discovered evidence.
 
 
 25
 As for the grounds that Defendants have engaged in fraud, misrepresentation or other misconduct warranting relief from judgment under Rule 60(b)(3), Plaintiff has not offered clear and convincing proof. See Anderson v. HHS, 907 F.2d 936, 952 (10th Cir.1990). Notwithstanding that the minutes are subject to a confidentiality agreement and nondisclosure order in state court, the affidavit commending them to the district court falls far short of indicating that have a direct and contrary bearing on the district court's resolution of the issues involved. We decline to review them; Plaintiff's motion requesting that we order the state court attorney to provide the minutes to us under seal is DENIED, as is Defendants' request for attorney's fees and costs incurred in responding to Plaintiff's latest motion.
 
 
 26
 AFFIRMED. All pending motions DENIED.
 
 
 27
 McKAY, Circuit Judge, dissenting.
 
 
 28
 I respectfully dissent from the majority opinion in this review of a grant of summary judgment. Read in the light most favorable to the plaintiff, which we are required to do, Plaintiff has made a showing sufficient to withstand summary judgment that the 1972 agreement established a pension plan for South West employees under ERISA. I believe the district court and the majority have misapplied the Donovan standard.
 
 
 29
 The basis for Mr. Lohmann's claim is clause 5.1 of the 1972 agreement, "Salaried employees will be covered under the Corporation's [referring to Green Bay] existing retirement, life insurance, and accident and health insurance plans for salaried employees. The cost of such plans will be considered part of the plant operational expense."
 
 
 30
 Read in the light most favorable to the plaintiff, the facts indicate that from 1972 until 1990, Green Bay and Messrs. Norwold, Hamilton, and Laster kept secret the relationship between Green Bay and South West. The three directors also kept the 1972 contract secret, and the South West employees first learned of section 5.1 of the contract during unrelated litigation in 1990, three years after South West merged into Green Bay. Plaintiff alleges that the directors of South West breached their fiduciary duties under ERISA in that they purposefully kept their employees in the dark about the plan so that South West would not have to make payments to the plan and would achieve higher annual profits; as a result, the directors would receive higher annual bonuses.
 
 
 31
 My disagreement with the majority in this case relates to the issue of whether a pension plan was "established" under ERISA for the salaried South West employees by the 1972 contract, specifically, section 5.1. The parties do not dispute the appropriate ERISA standard for determining whether a plan has been "established." This standard was set forth in the seminal case of Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982), and adopted by the Tenth Circuit in Peckham v. Gem State Mutual of Utah, 964 F.2d 1043 (10th Cir.1992), and states that "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan, 688 F.2d at 1373. As the district court recognized, Plaintiff Lohmann's theory is that the
 
 
 32
 1972 agreement incorporated by reference the terms of the [existing] Green Bay plan, and thereby constitutes a "plan document" under ERISA. Lohmann argues that the Donovan test for establishment of a plan is met, in that a reasonable person can look to the 1972 agreement's provision of coverage for South West's salaried employees and ascertain those employees as beneficiaries, and then look to the Green Bay plan [incorporated by reference] for the terms regarding benefits, financing and procedures for receiving benefits.
 
 
 33
 (Appellant's App. Vol. I at 253.)
 
 
 34
 After reciting the Donovan standard and Plaintiff's theory, however, the district court failed to apply the Donovan test to the facts of this case. The majority has compounded this error. In my view, the 1972 agreement, in combination with the detailed Green Bay plan which the agreement incorporated by reference, clearly satisfies the Donovan test. First, section 5.1 of the 1972 contract names a class of beneficiaries of the South West plan--the salaried employees of South West. Because the South West contract incorporated the Green Bay plan already in effect in 1972, the other Donovan requirements are also met. The Green Bay plan specifies the benefits for the employees and sets forth the procedures for financing and receiving those benefits. Any reasonable person could look at the two documents (the 1972 agreement and the existing Green Bay plan) and ascertain the intended benefits, beneficiaries, financing, and procedures.
 
 
 35
 The district court failed to analyze the facts under the Donovan test, however, holding instead that certain language in the Donovan opinion "provides grounds to reject Lohmann's theory of establishment of a 'plan.' " (Appellant's App. Vol. I at 253.) In essence, the district court read an additional requirement into the Donovan test: a requirement that, in addition to formalizing a written plan, a company must take at least one affirmative step toward maintaining the plan, such as making a contribution to the plan or describing the plan in the employee handbook. (Id. at 255.) The district court was persuaded by the sentence in Donovan that "no single act in itself necessarily constitutes the establishment of the plan." (Id. at 254.) Applying this language to the fact that Defendants had performed only one act toward establishing their plan--consummating the written agreement in 1972--the district court concluded that the Plaintiff had not satisfied the Donovan standard. In affirming the district court, the majority has similarly misconstrued Donovan.
 
 
 36
 I do not believe that Donovan supports the district court's theory. Donovan set forth a bifurcated approach to the "established" test; a plan can be established through a writing, or by certain physical acts which serve as circumstantial evidence of a plan when a writing does not exist. Indeed, Donovan made clear that a writing alone can satisfy the "established" test. Donovan, 688 F.2d at 1372. The Donovan court went on to note that "ERISA does not, however, require a formal, written plan." Id. The opinion then discussed how a plaintiff can circumstantially prove that a plan was "established" by conduct when a writing does not exist. Id. at 1372-73. For acts or conduct alone to "establish" an ERISA plan, the conduct must be extensive enough to make the plan "part of the employment relationship." Peckham, 964 F.2d at 1049. It was in this context that the Donovan court stated that no single act can constitute the "establishment" of a plan. The fact that the sentence in the Donovan opinion which distracted the district court referred to acts "outside [of] the plan" simply confirms my conclusion that it was referring to conduct outside of a writing. Donovan, 688 F.2d at 1373.
 
 
 37
 The majority's interpretation of Donovan essentially re-writes the triggering language in ERISA from "established or maintained" to "established and maintained." ERISA 4(a), 29 U.S.C. 1003(a) (emphasis added). This contravenes the long-standing policy of ERISA that companies "may not avoid the requirements of [the] Act by merely failing to comply and then arguing that the Plan is not within the Act due to their noncompliance." Dependahl v. Falstaff Brewing Corp., 491 F.Supp. 1188, 1195 (E.D. Mo.1980), aff'd in pertinent part, 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968 (1981). Indeed, ERISA "established minimum standards for vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government and making disclosures to participants." Donovan, 688 F.2d at 1370. Once the minimum standard is met through conduct or a writing, the benefits vest and the disclosure, fiduciary, and other responsibilities become mandatory. It would defeat congressional intent to allow a company or a director to escape liability simply because it began breaching its disclosure and reporting obligations from day one. As the Donovan court stated, "[I]t would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards." Donovan, 688 F.2d at 1372.
 
 
 38
 The majority has apparently adopted the view of the district court that some additional act was needed to establish the South West plan. The district court construed section 5.1 of the contract, and specifically the language "will be covered" (emphasis added), to constitute nothing more than an agreement to establish a pension plan at some date in the future. I believe this is an unreasonable construction of the contract, particularly in light of Donovan. Section 5.1 could not have been an agreement to establish a plan at a later date because there was nothing left for the company to do to establish the South West plan. Section 5.1 named the intended beneficiaries, incorporated the existing Green Bay plan thereby taking care of all of the other details, and stated that it was binding. The language "will be covered," it seems clear, refers to the fact that the South West directors still had to hire most of the new employees of South West. Section 5.1 simply states that those employees "will be covered" as soon as they are hired--under the South West plan established by the 1972 contract.
 
 
 39
 For the foregoing reasons, I would reverse the judgment of the district court and remand for trial on the merits. Therefore, I respectfully dissent.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 The Honorable Richard D. Rogers, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 Two of the Defendants have been dismissed
 
 
 [4]
 Unless otherwise noted, all references to appendices are those contained in appeal No. 93-5037
 
 
 [5]
 Okla. Stat. Ann. tit 15, 29 provides: "A contract, made expressly for the benefit of a third-person, may be enforced by him at any time before the parties thereto rescind it." The term "expressly" as used in the statute means " 'in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly.' " Keel, 639 P.2d at 1231 (quoting Watson v. Aced, 319 P.2d 83, 86 (1957))
 
 
 [6]
 A "pension plan is defined as
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
 (i) provides retirement income to employees
 ...
 regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.
 29 U.S.C. 1002(2)(A).